# Exhibit A

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT

2017 APR 10 PM 2:16

RICHARD ALEXANDER, CLERK

| | |
|---|---|
| LEE WARD, on behalf of himself and all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>GRAND CANYON EDUCATION, INC. d/b/a GRAND CANYON UNIVERSITY, )<br><br>Defendant. ) | CIVIL ACTION<br>FILE NO. _07 A 0 3 4 7 4 - 9_<br><br>JURY DEMAND<br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

Plaintiff Lee Ward, by and through its undersigned counsel, on behalf of himself and all persons and entities similarly situated, submits this Class Action Complaint and alleges the following based on personal knowledge as to allegations regarding Plaintiff and on information and belief as to other allegations.

### INTRODUCTION AND PARTIES

1.

This action seeks declaratory relief, monetary damages, and restitution from Defendant based on its improper practice of refusing to refund or forgive tuition charges even when students promptly notify the school of their intention to drop classes or withdraw their enrollment.

2.

Plaintiff Lee Ward is a United States citizen who signed up for online coursework with Grand Canyon University.

3.

Defendant Grand Canyon Education, Inc. is the publicly traded holding company that does business as Grand Canyon University ("GCU").  It trades on the NASDAQ exchange under the symbol "LOPE," which is based on the GCU mascot, the antelope.  The stock has surged in recent years and currently trades near its all-time high of over $70 per share, giving it a market value of well over $3 billion.  Defendant is registered to do business in Georgia and may be served with process via its agent Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

## JURISDICTION AND VENUE

4.

This Court has jurisdiction over this case because Defendant is registered to do business in the State of Georgia and is in fact doing business in the State of Georgia.  Defendant has successfully marketed GCU to thousands of Georgians who have enrolled, including thousands that are currently enrolled.  Defendant has sufficient minimum contacts with the State of Georgia and intentionally avails itself of the consumers and markets within the State of Georgia through the promotion, marketing, sale, and service of educational programs in Georgia.  This purposeful availment renders the exercise of jurisdiction by Georgia courts over Defendant permissible under judicially accepted notions of fair play and substantial justice.  Venue is also proper pursuant to O.C.G.A. §§ 14-2-510(b)(1) or (2).

## GENERAL FACTUAL ALLEGATIONS

5.

GCU is a rapidly growing for-profit college.  According to Defendant's recent financial reporting:

Our enrollment at December 31, 2016 was approximately 81,900, representing an increase of approximately 9.9% over our enrollment at December 31, 2015. Our net revenue and operating income for the year ended December 31, 2016 were $873.3 million and $237.2 million, respectively, representing increases of 12.2% and 12.8%, respectively, over the year ended December 31, 2015. Our net revenue and operating income for the year ended December 31, 2015 were $778.2 million and $210.4 million, respectively, representing increases of 12.6% and 16.3%, respectively, over the year ended December 31, 2014.

6.

Nearly 80% of GCU's students are online students who never set foot on the school's

Arizona campus. Defendant has assembled a massive marketing and recruiting operation to keep

new students enrolling, even though tens of thousands of students drop out each year without a

diploma or anything to show for their time as a student.

7.

The most important part of Defendant's operation is its highly efficient system of pushing

new students to apply for federal student loans and grants. Defendant concedes that over 72% of

GCU's funding comes from the federal government:

During fiscal 2016 and 2015, we derived approximately 72.3% and 74.8%, respectively, of our net revenues (calculated on a cash basis in accordance with Department of Education standards currently in effect) from tuition financed under the Title IV programs. The primary Title IV programs that our students receive funding from are the Federal Direct Loan program or FDL Program, and the Federal Pell Grant, or Pell, Program.

8.

Since students in many of GCU's online programs quickly realize that their "classes" and

"curriculum" are nothing more than a sham, Defendant's refund policies are critical to its

financial results. Unfortunately for students, and the federal government and taxpayers, even if

students become aware in their first "class" (a/k/a online session) that the course is bogus, they

are still charged excessive fees, namely at least 25% of the tuition. If a student fails to drop the class or withdraw until the second week of the course, then **no refund** is provided.

9.

GCU's refund policy has been summarized by Defendant as follows:

We have established a refund policy for tuition and fees based upon individual course start dates. Under our policy, for courses offered through a working adult modality, generally if a student drops or withdraws from a course before the course begins, 100% of the charges for tuition and fees are refunded. If a student drops or withdraws from a course during the first week of the course, 75% of the charges for tuition are refunded. If a student drops or withdraws from a course during or after the second week of a course, tuition charges and fees are not refunded. Most fees, including materials fees, are non-refundable for non-traditional students after the start of a course. We will refund tuition and fees according to the above policy unless a student attending courses online is a resident of a state that requires us to comply with different, state specific guidelines. For traditional students attending 15-week courses, generally if a student withdraws before the course begins, 100% of the charges for tuition and fees are refunded. If a student withdraws during the first week of the course, 90% of the charges for tuition are refunded and instructional fees and ground campus-related fees are refunded. If a student drops or withdraws from a course during the second week of a course, 75% of the tuition charges are refunded but most fees are non-refundable. If a student drops during the third week of a course, 50% of the tuition charges are refunded and during or after the fourth week, there are no refunds for tuition charges. Fees charged by us include graduation fees as well as fees for access to certain educational resources such as online materials. This tuition and fees refund policy is different from, and applies in addition to, the return of Title IV funds policy we are required to follow as a condition of our participation in the Title IV programs.

10.

The current University Policy Handbook includes the refund policy:

**Nontraditional Students**
Students who drop/withdraw from a course/all courses are eligible for the following refund:
Before Week 1................................................ 100% tuition refund
During Week 1 ................................................ 75% tuition refund
During or after Week 2 .................................... No refund
**Traditional Campus Students**
Students who drop/withdraw from a course/all courses within the 15-week semester at the ground campus in Phoenix, Arizona, are eligible for the following

refund. The refund policy is based on the start date of the semester regardless of where the course falls within the semester.

Before Week 1................................................. 100% tuition refund
During Week 1 ................................................. 90% tuition refund
During Week 2 ................................................. 75% tuition refund
During Week 3 ................................................. 50% tuition refund
During or after Week 4 ............................................... No refund

Thus, online students are treated in a much less favorable fashion than students at GCU's Arizona campus.

11.

Federal law and regulations do not allow GCU to keep federal grant or loan amounts when a student promptly withdraws from a course. In an effort to comply with such rules, GCU has adopted the following policy:

Any federal financial aid recipient who fails all courses in a semester (traditional campus) or withdraws from the University (traditional and nontraditional) is subject to a federal Return of Title IV Aid calculation. This calculation determines both the amount of federal aid that the school is allowed to retain as well as the amount that must be returned to the Department of Education.

An official withdrawal occurs when a student has formally requested to be withdrawn from the University. The student must submit a Complete Withdrawal Form, available on the student portal. If a student notifies his Student Services Counselor of his intent to withdraw from the University but did not complete the Official Withdrawal form, the Student Services Counselor will notify the Office of Academic Records of the official withdrawal request.

An unofficial withdrawal occurs when a student has stopped attending any coursework for a period of 14 consecutive days or more but has not communicated a desire to officially withdraw from the University.

The federal refund calculation is as follows:
1. Withdrawal:
a. Withdrawal from the University before the first day of classes, 100% of Title IV aid must be returned.
b. Withdrawal from the University through 60% of the payment period will result in a prorated percentage of aid being earned. Any unearned aid due from the school will be returned to the appropriate funding source. In some instances a portion of unearned aid will be the student's responsibility.
c. Withdrawal from the University after attending more than 60% of the payment period will result in 100% of the student's Title IV aid being earned. The

institution will retain 100% of funding that covers institutional costs; students may retain the remainder of funding.

In order to avoid issuing credits and refunds, however, GCU has adopted a variety of practices designed to ensure that its online students, and the federal government, cannot obtain the refunds to which they are legally and contractually entitled.

12.

GCU does its best to discourage online students from dropping or withdrawing from courses. First, the mechanisms that students would naturally utilize to drop a course are not deemed valid by GCU. For example, an email or phone call to the instructor or counselor is not accepted.

13.

Second, the ability to make an online drop request – which is obviously the method that most online students will seek out first – is not easily accessed by students. There is no online mechanism for dropping just a single class. Rather, the website says: "To withdraw from a course, contact your SSA or call us at 855-GCU-LOPE."

14.

Third, although there is an online form for a student to request a complete withdrawal from GCU, the form is written to discourage students from actually completing it. Most critically, the form requires a student to acknowledge that they are responsible for tuition payments by initialing the following statements: "I have consulted with my Student Services Counselor regarding the financial implications including any indebtedness that will result because of my decision to withdraw. I understand that I am responsible for payment of any balance on my student account." Thus, the very form itself is designed to make sure students will not complete it.

### PLAINTIFF'S FACTUAL ALLEGATIONS

15.

In 2015, Mr. Ward contacted GCU about completing his bachelor's degree with a specialty in healthcare. GCU aggressively recruited Mr. Ward. GCU promised that the quality of the coursework would be top notch. GCU agreed to provide assistance in obtaining federal funds. Mr. Ward ultimately agreed to enroll.

16.

GCU was successful in procuring federal loans and grants for Mr. Ward to take its online courses.

17.

After Mr. Ward began his healthcare class he quickly realized that the class was not at all what had been promised. Rather than useful instruction he was tasked to prepare weekly essays, and was given no guidance. After a few weeks, Mr. Ward dropped out of the course and terminated his enrollment at GCU.

18.

Neither Mr. Ward nor the federal government received any refund or write-off of the tuition, even though the amount of tuition paid was for the entire course and Mr. Ward failed to conclude most of the course.

19.

GCU notified Mr. Ward that he owed nearly $1000 for the remaining tuition that was owed. Mr. Ward did not agree that the amount was owed, but he paid the full amount which GCU said he owed to prevent any problems with his credit.

20.

Mr. Ward thought he was done with GCU forever.

21.

GCU sent Mr. Ward a copy of the Form 1098-T which GCU used to report the amount of federal benefits obtained on his behalf in 2015. The form listed $2,888 as the total amount of federal grants or scholarships paid on his behalf in 2015.

22.

After Mr. Ward dropped out, GCU recruiter Josh Durfee began to aggressively contact Mr. Ward to encourage him to reenroll at GCU. Mr. Durfee called Mr. Ward constantly, sometimes on a weekly basis. Mr. Ward explained the problems he had experienced with his first GCU enrollment but still GCU persisted.

23.

Mr. Durfee informed Mr. Ward that one GCU program – "Health Care Systems and Transcultural Health Care" – was placing new graduates in jobs with an average starting salary of $90,000. Mr. Durfee promised the program was nothing like what Mr. Ward had suffered through in his prior GCU experience. Mr. Ward showed interest only after hearing about the high-quality program and the high starting salaries.

24.

Based on Mr. Durfee's representations, Mr. Ward agreed to enroll in the "Health Care Systems and Transcultural Health Care" coursework. GCU procured over $6,000 in federal loans for Mr. Ward.

25.

Mr. Ward should not have believed Mr. Durfee. Once the online class began, Mr. Ward immediately recognized that the course was a sham. The course consisted of students completing essays each week, with little or no guidance and no point to the exercise since such projects would not lead to knowledge of the subject area.

26.

Mr. Ward immediately searched for the online mechanism to withdraw his enrollment. He found the complete withdrawal form – for withdrawing completely from GSU enrollment – and completed it. He received an immediate automated notice on his screen stating that: "An email has been sent regarding your request to academicrecords@gcu.edu". He received no confirmation after that, however, and went online a second and third time to withdraw and still got no response. No other option was provided through the GCU online website. Mr. Ward completed the online withdrawal form a total of three times during the first week of the course.

27.

Mr. Ward did not attend the online class or otherwise participate but his withdrawal was never acknowledged. Having heard nothing, and in an abundance of caution, Mr. Ward once again completed the online withdrawal form. Mr. Durfee then called to notify Mr. Ward that he had waited until after the first week to drop the course and so would still owe the full tuition. Mr. Ward also may owe substantial amounts to the federal government for loans which should have been fully refunded to the U.S. government.

28.

Mr. Ward objects to paying the invoice for multiple reasons. Most obviously, for purposes of this case, he objects because he withdrew during the first week and should have been

charged nothing, or at least much less, for tuition.  Mr. Ward also objects for other reasons, which are not raised as claims in this case, including that he was misled into taking the course in the first place based on several erroneous and material statements from Mr. Durfee.  Also, the cost structure for the course was not as he had been informed by GCU.  The school increased the charges on after Mr. Ward had enrolled.

29.

Defendant referred the invoice to internal collections and will soon report the debt to credit agencies and credit bureaus.  Defendant has refused to write-off the improper balance.

30.

On March 29, 2017, GCU's Collections Department sent Mr. Ward a letter stating that "[o]ur records indicate that your account balance of $1,639.38 is past due."

## CLASS ACTION ALLEGATIONS

31.

Mr. Ward brings this class action on behalf of himself and the following class of persons:

All Grand Canyon University students whose tuition assessments have not been properly refunded or recredited.

32.

Excluded from the Class are Defendant's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

10

33.

The time period for the Class is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as Defendant ceases its improper conduct.

34.

Numerosity:  The members of the proposed Class are so numerous that individual joinder of all members is impracticable.  GCU has over 80,000 students on an annual basis.  Tens of thousands of students drop classes or attempt to withdraw entirely from the school each year. Thus, thousands of students and former students are included in the Class.  The exact number and identities of the members of the proposed Class are unknown at this time and can be ascertained only through appropriate discovery.

35.

Common Questions of Law and Fact Predominate:  There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members.  Common questions of law and fact include, but are not limited to:

    a.  Defendant's misstatements, misrepresentations, and/or omissions about its refund policies.

    b.  Whether GCU has failed to honor, or timely honor, drop/withdrawal requests submitted by its students.

    c.  Whether Defendant has a legal and/or contractual duty to provide further refunds to GCU students, including refunding to the federal government the proper amounts of federal student loans and grants.

11

    d.  Whether Defendant has breached its contracts with Plaintiff and the Class via the practices described herein.

    e.  Whether Defendant has been unjustly enriched as a result of its improper refund practices.

36.

Typicality:  Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by the actions of Defendant. For example, the Defendant's form contracts as well as its breaches as described herein are the same or substantially the same for Plaintiff and all members of the Class.  GCU has established systematic and automated policies and practices to govern the refunding or recrediting of student tuition assessments.  Thus, the experience of Mr. Ward is typical.

37.

Adequacy of Representation:  Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in prosecuting complex and consumer class action litigation.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so.

38.

Superiority of Class Action:  Plaintiff and the members of the Class suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the Class is impractical.  Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome

12

to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the Class members.

39.

Risk of Inconsistent or Varying Adjudication:  Class action treatment is proper, and this action should be maintained as a class action because the risks of separate actions by individual members of the Class would create a risk of:   (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for the Defendant as the party opposing the Class; and/or (b) adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impeded their ability to protect their interests.

40.

Action Generally Applicable to Class as a Whole:  Defendant, as the party that may potentially oppose certification of the Class, has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

13

## REQUESTS FOR RELIEF

## COUNT ONE

## BREACH OF CONTRACT
(On Behalf of Plaintiff and the Class)

41.

Plaintiff incorporates by reference the allegations from paragraphs 1-40 as if set forth verbatim herein.

42.

Plaintiff and Defendant have contracted for educational services.  As described above, the actions taken by Defendant have violated the specific terms of its form agreement with Plaintiff.

43.

The relevant terms of GCU's contracts are materially the same for all students.  Student policies – which are expressly incorporated into the student agreement -- are also the same for all students.  Thus, GCU's breaches of the contract, by failing to properly refund and recredit tuition assessments, are applicable to all members of the Class.  Defendant is liable for the losses of Plaintiff and the Class that have resulted from Defendant's breaches of the parties' contractual agreement.

44.

Defendant violated its agreement with Plaintiff and the Class by failing to honor tuition refund policies.  For example, Defendant violated its agreement with Plaintiff and the Class by failing to honor, or timely honor, drop/withdrawal requests.  By failing to honor such requests, Defendant has refused to refund, credit, or write-off substantial amounts of tuition.  Thus, Defendant has breached the express terms of its own form contract.

45.

The laws of nearly all states impose upon each party to a contract the duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain is an example of a violation of good faith in the performance of contracts.

46.

Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of violations of good faith and fair dealing are willful rendering of imperfect performance and abuse of a power to specify terms.

47.

Defendant has breached the covenant of good faith and fair dealing through its practices as alleged herein.  Even if the Court or jury does not find a breach of an express contractual provision, it should find that Defendant violated good faith by failing to honor its refund policies.  Further, Defendant's systematic refusal to timely process reasonable drop/withdrawal requests is not in keeping with good faith and fair dealing.  Also, Defendants violations of federal law and regulations in its crediting of refunds – including refunds of federal student loans – will constitute a violation of good faith and fair dealing.

48.

GCU may argue that it has given itself the discretion under its form contract, or its incorporated policies, to handle refunds or recredits of tuition assessments as it sees fit. Such discretion is, however, constrained by the covenant of good faith and fair dealing. Where GCU has abused its discretion and failed to issue proper refunds or credits, a breach of good faith has occurred.

49.

Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them under the agreement, or those obligations are waived.

50.

Plaintiff and members of the Class sustained damages as a result of Defendant's breaches of the agreement, as well as the further breaches of the agreement as modified by the covenant of good faith and fair dealing.

## COUNT TWO

## UNJUST ENRICHMENT
(On Behalf of Plaintiff and the Class)

51.

Plaintiff incorporates by reference the allegations from paragraphs 1-40 as if set forth verbatim herein.

52.

This Count Two is pursued only in the alternative to Count One. Plaintiff acknowledges that if his breach of contract claims are successful he cannot also pursue unjust enrichment as to any given claim. If, however, all or portions of Defendant's contract are deemed invalid or unenforceable for any reason, then unjust enrichment will be applicable. Also, if claims are

deemed not to be covered by contract – for example, if Defendant has kept funds in violation of federal law or regulation, but in a way that does not violate the contract – then unjust enrichment will require disgorgement of such funds.

53.

Plaintiff, on behalf of himself and the Class, asserts a common law claim for unjust enrichment.

54.

By means of Defendant's wrongful conduct alleged herein, Defendant knowingly engaged in practices which harmed Plaintiff and members of the Class and that were unfair, unconscionable, and oppressive. Moreover, Defendant's conduct is improper and/or illegal as a matter of law.

55.

Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class. Also, GCU wrongfully retained payments from the federal government for student grants or loans, which are now owed by Plaintiff and the members Class and which counted against their annual and lifetime limits for federal tuition assistance. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

56.

As a result of Defendant's wrongful conduct as alleged herein, GCU and its owners have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

57.

Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

58.

Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it has received, and is still receiving, without justification, by improper handling of tuition refunds. Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

59.

The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds. A constructive trust should be imposed upon all wrongful or inequitable sums received by Defendant traceable to Plaintiff and the members of the Class.

60.

Plaintiff and members of the Class have no adequate remedy at law.

**COUNT THREE**

**DECLARATORY JUDGMENT**
(On Behalf of Plaintiff and the Class)

61.

Plaintiff incorporates by reference the allegations from paragraphs 1-40 as if set forth verbatim herein.

62.

Class-wide declaratory relief is appropriate where Defendant has "acted or refused to act on grounds that apply generally to the class."

63.

Defendant has attempted to (a) backtrack from its agreements as to tuition refunds and (b) immunize itself from liability for its improper practices by burying purported contractual provisions that make it as difficult, dangerous, and costly as possible for students to obtain relief from Defendant's overbilling practices.

64.

Such provisions are unenforceable on multiple grounds, including because they are illusory, lack mutuality, and violate federal law and regulation.  Furthermore, the provisions are invalid exculpatory clauses because they are designed to severely restrict remedies and insulate Defendant from liability and are not explicit, prominent, and clear, and indeed are set forth in a manner that does not distinguish their importance from other contract terms.

65.

Moreover, considering the great business acumen and experience of Defendant in relation to Plaintiff and the members of the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the unreasonableness of the terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

66.

A judicial declaration is necessary and appropriate so the parties may ascertain their rights, duties, and obligations with respect to these provisions.

67.

The Court should use its equitable powers to declare these provisions to be unenforceable.

68.

Further, the Court should declare that certain of Defendant's policies, practices, and contractual provisions violate federal law and regulation. The Court should use its equitable powers to declare that certain policies, practices, and/or contractual provisions cannot be enforced in violation of federal law.

WHEREFORE, Plaintiff Lee Ward, on behalf of himself and the proposed Class, requests that this Court enter judgment against Defendant and:

(a)     Certify this case as a class action pursuant to O.C.G.A. § 9-11-23;

(b)     Award Plaintiff and the Class actual, incidental, and consequential damages in an amount to be proven at trial, including any and all compensatory damages, punitive damages, restitution, any applicable penalties and interest, authorized attorneys' fees, interest, and costs, and any further relief as the Court deems just, equitable, and proper;

(c)     For an award of all reasonable costs and attorneys' fees incurred by Plaintiff;

(d)     For trial by jury of all matters; and

(e)     For such other and further relief as the Court may deem just and equitable.

DATED this 7th day of April, 2017.

Respectfully submitted,

BY:    WEBB, KLASE & LEMOND, LLC

E. Adam Webb
   Georgia Bar No. 743910
G. Franklin Lemond, Jr.
   Georgia Bar No. 141315

1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-0773
Adam@WebbLLC.com
Franklin@WebbLLC.com

*Attorneys for Plaintiff*

# General Civil Case Filing Information Form (Non-Domestic)

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY GA

2017 APR 10 PM 2:16

RICHARD ALEXANDER, CLERK

**Court**
☑ **Superior**
☐ **State**

**County** Gwinnett

**Docket #** 17 A 03474-5

**Date Filed** 04/07/2017
MM-DD-YYYY

## Plaintiff(s)

Ward, Lee
Last    First    Middle I.    Suffix    Prefix    Maiden

Last    First    Middle I.    Suffix    Prefix    Maiden

Last    First    Middle I.    Suffix    Prefix    Maiden

Last    First    Middle I.    Suffix    Prefix    Maiden

**No. of Plaintiffs** 1

## Defendant(s)

Grand Canyon Education, Inc.
Last    First    Middle I.    Suffix    Prefix    Maiden

Last    First    Middle I.    Suffix    Prefix    Maiden

Last    First    Middle I.    Suffix    Prefix    Maiden

Last    First    Middle I.    Suffix    Prefix    Maiden

**No. of Defendants** 1

**Plaintiff/Petitioner's Attorney**    ☐ Pro Se

Webb, E. Adam
Last    First    Middle I.    Suffix

Bar # 743910

---

### Check Primary Type (Check only ONE)

- ☑ Contract/Account
- ☐ Wills/Estate
- ☐ Real Property
- ☐ Dispossessory/Distress
- ☐ Presonal Property
- ☐ Equity
- ☐ Habeas Corpus
- ☐ Appeals, Reviews
- ☐ Post Judgement Garnishment, Attachment, or Other Relief
- ☐ Non-Domestic Contempt
- ☐ Tort (If tort, fill in right column)
- ☐ Other General Civil Specify_____

---

### If Tort is Case Type:
### (Check no more than TWO)

- ☐ Auto Accident
- ☐ Premises Liability
- ☐ Medical Malpractice
- ☐ Other Professional Negligence
- ☐ Product Liability
- ☐ Other Specify _____

**Are Punitive Damages Pleaded?**    ☐ Yes    ☐ No

---

☑ I hereby certify that the documents in this filing (including attachments and exhibits) satisfy the requirements for redaction of personal or confidential information in O.C.G.A. 9-11-7.1

2Y3uK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY

### STATE OF GEORGIA

**Lee Ward**

_____

_____

_____

CIVIL ACTION NUMBER: **17  A 0 3 4 7 4 - 9**

PLAINTIFF

VS.

**Grand Canyon Education, Inc.**

_____

_____

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**E. Adam Webb
Webb, Klase & Lemond, LLC
1900 The Exchange SE, Suite 480
Atlanta, GA 30339**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____10_____ day of **April** _____, 20__**17**__.

Richard T. Alexander, Jr.,
Clerk of Superior Court

By _____
Deputy Clerk

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

SC-1 Rev. 2011

Civil Action No. 17 A03474-9

Date Filed 4/10/17

Magistrate Court ☐
Superior Court ☑
State Court ☐
Georgia, Gwinnett County

Lee Ward

_____ Plaintiff

VS.

Grand Canyon Education, Inc.

_____ Defendant

Attorney's Address

E. Adam Webb
Webb, Klase & Lemond LLC
1900 The Exchange SE, Suite 480
Atlanta, GA 30339

Name and Address of party to be served.

Grand Canyon Education, Inc.
C/o Corporation Service Company
40 Technology Pkwy S, Suite 300
Norcross, GA 30092

_____ Garnishee

## Sheriff's Entry Of Service

**Personal** ☐

I have this day served the defendant _____ personally with a copy
of the within action and summons.

**Notorious** ☐

I have this day served the defendant _____ leaving
a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows:

age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at
the residence of defendant.

**Corporation** ☑

Served the defendant Grand Canyon Education Inc _____ a corporation
by leaving a copy of the within action and summons with Alisha Smith
in charge of the office and place of doing business of said Corporation in this County.

**Tack & Mail** ☐

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the
premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States
Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate
postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**Non Est** ☐

Diligent search made and defendant _____
not to be found in the jurisdiction of this Court.

This 12 day of April, 20 17.

_____
KURTZ 50115E
Deputy

Sheriff Docket_____ Page_____

_____
Gwinnett County, Georgia

WHITE: Clerk          CANARY: Plaintiff / Attorney          PINK: Defendant

SC-2 Rev.3.13

# IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| WARD | CIVIL ACTION NO. 17-A-03474-9 |
| V. | |
| GRAND CANYON EDUCATION | |

Re: Scheduling Conference Regarding Discovery as to Class Certification

## **RULE NISI**

A hearing is hereby scheduled on the above motion on **Tuesday, May 30, 2017,** at **1:30 PM** at the

Gwinnett Justice and Administration Center, 75 Langley Drive, Lawrenceville, GA, in Courtroom

**2B**.

Let a copy of this order be mailed to all parties or their counsel of record.
    *__The party seeking this hearing shall cause all parties to be served with this notice.__*

SO ORDERED this 4th day of May, 2017.

_____
Judge TOM DAVIS
Superior Court of Gwinnett County

**INTERPRETER:** If your case requires a court appointed interpreter, please contact Debbie Lee, 770-822-8585, or email debbie.lee@gwinnettcounty.com

COPIES TO:
E ADAM WEBB , 1900 THE EXCHANGE SE, SUITE 480, ATLANTA, GA 30339 - Attorney for Plaintiff
G FRANKLIN LEMOND JR, 1900 THE EXCHANGE SE, SUITE 480, ATLANTA, GA 30339 - Attorney for Plaintiff